605 A.2d 988

**Michael Anthony LEWIS**

v.

**STATE of Maryland.**

No. 1141 Sept. Term, 1991.

Court of Special Appeals of Maryland.

May 6, 1992.

---

764

Nancy S. Forster, Asst. Public Defender, submitted (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen., submitted (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before MOYLAN, ALPERT and MOTZ, JJ.

MOTZ, Judge.

Without explanation, appellant, Michael Anthony Lewis, never returned from the luncheon recess during his one-day trial in the Circuit Court for Baltimore City (Angeletti, J.) on charges of attempted breaking and entering, malicious destruction of property, and resisting arrest. In his absence, the jury found him guilty of all charges; he was sentenced to six months incarceration and a $500 fine for attempted breaking and entering, sixty days consecutive for malicious destruction of property, and ten years consecutive for resisting arrest. Appellant now challenges his convictions on the following grounds:

1. The trial court abused its discretion in continuing the trial in appellant's absence, subsequent to appellant's departure from his trial during a lunch break;

2. The trial court committed prejudicial error when it informed the jury that it had issued a bench warrant for appellant after he left his trial; and

3. The court's instructions to the jury, in which it presented examples of when a person has taken "substantial steps" toward breaking and entering and mischaracterized the state of mind necessary to commit malicious destruction of property, constituted plain error.

We affirm.

(i)

One witness, Baltimore City police officer Raymond Laszlo, testified during the morning of appellant's trial. Officer Laszlo testified that, in the early morning (about 1:30 a.m.) of April 8, 1991, he responded to a call to an alley located

outside a clothing store on Reisterstown Road. Upon discovering that two locks and the doorknob had been removed from the back door of the store, he and his partner arrested appellant, who was attempting to leave the scene. Appellant resisted the arrest, but after about 90 seconds, he was handcuffed.

After Officer Laszlo's testimony, at 12:04 p.m., the trial was adjourned for lunch. The court instructed the jury to return by 1:50 p.m. Prior to summoning the jury after the lunch recess, the court said:

> Let the record reflect that it is 2:05 p.m. The defendant was advised to return at 1:50 p.m. He's failed to return. We've waited 15 minutes for him to return. He has voluntarily absented himself from the court. His property bond is forfeited; a bench warrant is being issued. There will be no bail and we will, of course, continue the trial to a conclusion.

The court then asked a police officer to contact his district and request that an "all points" be issued, so that appellant could be apprehended that day. Defense counsel offered no explanation of appellant's absence or any assertion that it was involuntary. Nor did defense counsel object to the continuation of the trial.

The trial court then summoned the jury. As soon as it was seated, he said:

> Good afternoon, ladies and gentlemen. We were all ready to proceed at 1:50 but as you can see, there's an empty chair at the defense table. Mr. Lewis has decided not to rejoin us so his bail has been forfeited and I've issued a bench warrant for him and we will continue the trial to a conclusion.

Again, defense counsel offered no objection either to the continuation of the trial or to the judge's characterization of appellant's absence.

The State then called its next witness, Lavern White, a co-owner of and salesperson at the clothing store where the attempted break-in occurred. She testified that, when she

left the building on April 6, 1991 at about 7 p.m., the back door was intact. The next time she saw the door was when the police summoned her early on April 8. When she arrived at the scene, the locks and doorknob on the door had been forcibly removed and Officer Laszlo already had appellant in his custody.

After White testified, the State rested its case. The defense made a motion for judgment of acquittal which was denied. The judge then asked defense counsel if he had any witnesses; counsel replied, "Not any more." Defense counsel then renewed the motion for judgment of acquittal which was again denied. Prior to closing arguments, the trial judge instructed the jury to base its verdict on the evidence alone. He further said:

> Now you are not to conclude from any conduct or words of mine that I favor one party or the other, or that I believe or disbelieve the testimony of the witnesses. You, not I, are the sole judge of the credibility of the witnesses and the weight to be given the evidence, and you are not to be influenced by anything I may have said during the course of the trial.

After the closing statements and a few additional instructions from the court, the jury retired to deliberate. In less than half-an-hour, it returned with a guilty verdict.

Approximately six weeks later, appellant's sentencing hearing was held. Because the appellant was represented at the hearing by a new attorney, the court briefly detailed the outcome of appellant's trial, remarking that appellant "decided not to stay around to see what happened." Defense counsel responded, "I'm not going to dispute ... the situation with his absence that day." Speaking on his own behalf, appellant said, "I regret the inconvenience I caused the court and that was involved in my absence and whatever." He did not, however, explain his absence. Moreover, neither he nor his attorney challenged the court's prior decision to proceed with the trial in appellant's absence.

(ii)

The right of an accused to be present at every stage of his or her trial is a common law right preserved by both the Sixth Amendment of the United State Constitution and Article 5 of the Maryland Declaration of Rights; it is also stated with particularity in Maryland Rule 4–231(b) (1992 Repl.Vol.) [1]. *See Grohman v. State,* 258 Md. 552, 567, 267 A.2d 193 (1970), *cert. denied,* 401 U.S. 982, 91 S.Ct. 1204, 28 L.Ed.2d 334 (1971); *Young v. State,* 5 Md.App. 383, 385, 247 A.2d 751 (1968). *See also United States v. Muzevsky,* 760 F.2d 83, 84 (4th Cir.1985). The right to be present at a trial, however, is waived by a defendant who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain. Md. Rule 4–231(c)(1). In other words, a defendant who freely and voluntarily absents himself from trial (or, as here, fails to return from lunch break), has waived his right to be present at trial and, at the judge's discretion, the trial may be continued to a verdict in the defendant's absence. *Barnett v. State,* 307 Md. 194, 204, 512 A.2d 1071 (1986).

Appellant asserts that the trial court abused its discretion in proceeding to try him *in absentia* when he did not return from lunch. He cites no authority, however, which holds that a court cannot conclude that a defendant's absence is voluntary and proceed with the trial when a defendant has failed to return in the middle of trial, in the face of specific instructions that the trial would resume at a certain hour, and in the absence of any explanation or objection to proceeding with the trial.

In *Barnett v. State,* the Court of Appeals specifically rejected a defendant's claim that even if "there had been an effective waiver of rights involving presence, the trial court

---

**1.** The only exceptions to the defendant's entitlement to be present at a preliminary hearing and every stage of the trial are (1) conferences or arguments on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248; or (3) at a reduction of sentence hearing pursuant to Rules 4–344 and 4–345.

abused its discretion in proceeding to try him in absentia." 307 Md. at 213, 512 A.2d 1071. The *Barnett* court, after recognizing that "[o]bviously a trial court which has concluded that a defendant is voluntarily absent is not compelled to conduct a trial in absentia," held that there was no abuse of discretion in doing so once a voluntary waiver of the right to be present had been established. *Id.* The court rejected a more stringent standard adopted in some federal cases and held that in determining whether to try the defendant *in absentia* the "concern of the trial judge must be with whether the absent defendant has voluntarily relinquished known rights involving presence at trial." *Id.*

In *Barnett* and *Sorrell v. State,* 315 Md. 224, 554 A.2d 352 (1989), the Court of Appeals described some of the procedures which a court may employ in order to find that a defendant's absence is voluntary. For example, "verification that a party is not at home, not at work, and not in any local hospital may justify the conclusion that the absence is voluntary." *Sorrell,* 315 Md. at 229 n. 2, 554 A.2d 352. In addition, "familial observations and the length of the absence may be helpful" in arriving at the determination. *Id. See also Barnett, supra,* 307 Md. at 199–200, 512 A.2d 1071 (trial court contacted local hospitals and was advised that absent defendant had not been admitted to any of them); *Howell v. State,* 87 Md.App. 57, 589 A.2d 90 (1991) (trial court, which continued case to next day and "made other ... inquiries when defendant absented himself, did not err in trying defendant *in absentia*"). In most situations these procedures are appropriate; in many situations they are necessary. They are not, however, required in every situation. No Maryland case mandates that these or any other procedures be executed prior to the continuation of the trial in every case.

Although there appears to be no Maryland case dealing with the precise fact situation presented here, there is relevant out-of-state case law. Those cases support the conclusion that, when a defendant on bond simply vanishes,

it is well within a court's discretion to conclude, from that fact alone, absent any other explanation, that the absence is voluntary, even over objection of defense counsel. For example, in *State v. White*, 669 S.W.2d 220 (Mo.App.1983), a criminal defendant failed to return after a short recess during the voir dire of the jury panel in his case. Over the objection of the defense counsel, who did not explain his client's absence, the court continued the remainder of the voir dire and the trial itself in the defendant's absence. The Missouri Court of Appeals affirmed this decision, stating that "a rebuttable presumption that the defendant has voluntarily waived his right to appear arises when the defendant is free on bond and fails to appear." *Id.* at 221. *See also State v. Drope*, 462 S.W.2d 677, 681 (Mo.1971) (when defendant is free on bond, and he does not appear at the appointed time, it is presumed that the absence is voluntary until established otherwise); *State v. Cotton*, 621 S.W.2d 296, 298 (Mo.App.1981). In addition, the *White* court said, "[The defendant] has advanced no explanation for his absence; therefore, his absence was voluntary." 669 S.W.2d at 221 (*citing State v. Cheeks*, 604 S.W.2d 30, 32 (Mo.App.1980)).

Similarly, in *Nauls v. State*, 762 S.W.2d 336 (Tex.App. 1988), the Court of Appeals of Texas affirmed a trial court's decision to proceed with trial when, the day after the defendant appeared to enter his not guilty plea, he failed, without explanation, to appear at trial. Again, defense counsel protested the decision to proceed with the trial, asserting that " '[W]e don't know that [the defendant's absence] is voluntary.' " *Id.* at 337. In holding that the trial court did not abuse its discretion in going forward with the trial, the intermediate appellate court said:

> The present trial court had some evidence before it to support its conclusion that appellant's absence was voluntary. Appellant was in court the afternoon before and was ordered to appear in that courtroom at 9:00 a.m. the next morning; he was on bond. Further, no one, including the appellant, communicated with the court or appel-

lant's counsel to explain his absence. When he was told to appear in court by the clerk, he continued to absent himself. The trial court could infer from the circumstances before it at the time that appellant voluntarily absented himself, and could therefore proceed to trial and continue with the trial.

*Id.* at 338.[2] *See also United States v. Sanchez,* 790 F.2d 245, 250 (2d Cir.1986) (defense counsel's acknowledgement that " 'there is no evidence of where [the defendant] is' " adequately supports trial court's conclusion that defendant " 'willfully absented himself without a reason' "); *United States v. Muzevsky, supra,* 760 F.2d at 85 ("when the court does not know the reasons for the defendant's absence and has no basis to believe the trial can be rescheduled within a reasonable time, consideration of the government's difficulty in reassembling its proof may dictate an immediate trial").

Here, appellant claims that the trial court's decision to proceed with the trial in his absence is error, despite the fact that appellant has *never* offered an explanation for his absence or pointed to any way in which it prejudiced him. We are unwilling to hold that the circuit court abused its discretion in deciding to proceed with the trial when: (1) a defendant, free on bond, failed to return to his trial at the appointed time; (2) defense counsel never objected to continuing with trial; and (3) neither defense counsel nor the defendant himself offered any suggestion that appellant's absence was anything other than voluntary or that it in any way prejudiced his case.[3] We reiterate the general rule that "[c]ourts should not be quick to hold that delinquencies

---

**2.** The appellate court in *Nauls* affirmed even though at a hearing for a new trial there was testimony that a medical emergency of the defendant's girlfriend prevented him from appearing at trial.

**3.** Not only were no such assertions made at trial or sentencing, but also, although the trial court had the power to grant a new trial upon a finding of an "unjust" verdict, *see Barnett,* 307 Md. at 214, 512 A.2d 1071, appellant apparently made no request for a new trial on this basis. *Compare Nauls,* 762 S.W.2d at 338.

of the defendant effect the waiver of rights that are to be carefully safeguarded." *Barnett*, 307 Md. at 213, 512 A.2d 1071. We might well reach a different conclusion if appellant or his counsel had at any time suggested that his failure to return to trial was not voluntary or that this failure prejudiced his case. In the absence of any such suggestion, however, the trial court's determination here, after a fifteen minute delay, that appellant's absence was voluntary and that appellant would be tried *in absentia*, was not error.

### (iii)

Appellant also asserts that the trial court erred when it told the jury, upon resuming the trial, that "Mr. Lewis has decided not to rejoin us so his bail has been forfeited and I've issued a bench warrant for him." Through this remark, appellant argues, the trial court "indicated to the jury his belief that Appellant had wrongfully absconded, thereby suggesting flight of the guilty."

■ Having found that the trial court did not abuse its discretion in determining that appellant's absence was voluntary, we further point out that Maryland law permits a jury to consider a defendant's flight from trial as reflecting a consciousness of guilt. In *Sorrell v. State, supra*, the Court of Appeals held that it is "not inconsistent with Maryland law to allow the jury to determine whether consciousness of guilt of the instant crime or some other factor motivated the defendant's sudden departure." 315 Md. at 231, 554 A.2d 352. The trial court's comment here that "I've issued a bench warrant" was, we believe, ill-advised, because it might lead a jury to believe that the trial court had already concluded that the defendant was guilty and so should be arrested. It was not error, however, in light of the fact that a jury is entitled to consider a defendant's flight, as evidence of guilt. Moreover, here the trial court did clearly instruct the jury to consider only the evidence presented by the parties, and "not to be influenced by anything I may have said during the course of the trial."

(iv)

Finally, appellant challenges two portions of the trial court's instructions to the jury, neither of which was objected to below. First, he asserts that the court erred in informing the jury that an "attempted storehouse breaking" requires a "substantial step beyond preparation toward the commission of the crime," because the court identified certain acts, such as the breaking of locks, the attempted breaking of doors, or the attempt to pry away bars, as constituting a "substantial step." Appellant contends that, through this instruction, the trial court "usurped the jury's fact finding function on the issue of whether or not the evidence was sufficient to establish attempt." He presents no authority to support this argument; far more persuasive is the state's explanation that "the jury still had to determine for itself whether and when the locks were broken off, if such was done in an effort to break down the door, and if Lewis was the person who committed the acts in question."

■ Second, appellant contends that the trial court committed "plain error" when it instructed the jury about the necessary state of mind regarding the commission of malicious destruction of property. Specifically, the court said:

Now the requirement of maliciously and wilfully means either that the defendant specifically intended to cause the destruction and injury to another's property, or that the act was done without any justification, excuse, or mitigation, in wanton and willful disregard of the plain and strong likelihood of damage that was done.

Despite his failure to object at the time, appellant now appeals this instruction on the ground that it misstates the state of mind requirement in the offense of malicious destruction of property, because that offense is a specific intent crime. *Shell v. State*, 307 Md. 46, 68, 512 A.2d 358 (1986). The State properly acknowledges that malicious destruction of property is a specific intent crime, which requires both deliberate intent to injure the property of

another and malice, but asserts that the instruction given was not plain error. We agree and hold that, in light of the evidence against appellant as well as his failure to object to this instruction at trial, the instruction does not require reversal.[4] *See Sine v. State,* 40 Md.App. 628, 633, 394 A.2d 1206 (1978) (plain error rule will not be invoked where the instruction was of such a character that if the error had been brought to the court's attention, the proper clarification could have been made without confusing the jury and any prejudicial effect could have been dissipated).

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

[4]. In addition to the testimony of two witnesses, the jury considered the tool used by appellant to damage the property (a crowbar) and a diagram drawn by Officer Laszlo, depicting the concealed area where appellant attempted the break-in.